**COLT INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

Civ. A. No. 89–1535.

United States District Court, District of Columbia.

July 10, 1989.

Kenneth S. Kramer, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., for plaintiff.

Sharon A. Cohen, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This matter is before us on plaintiff's application for a preliminary injunction which seeks to prohibit defendants from continuing to violate the Trade Secrets Act.

The matter has been fully briefed and argued.

*Background*

In July 1967, defendant U.S. Government and plaintiff entered into a License Agreement, which in exchange for a lump sum payment and the payment of royalties, gave the defendant the right to use Colt patents and trade secrets to manufacture, or to have manufactured, the M16 rifle and spare and repair parts. For almost eighteen years, the provisions of the License Agreement were carried out without incident. In May 1985, however, a United States District Court issued a decision which challenged the validity of plaintiff's patents and trade secrets. *Christianson v. Colt Industries Operating Corp.*, 609 F.Supp. 1174 (C.D.Ill.1985). Because of this decision, the defendant by letter dated September 24, 1985 notified plaintiff that it no longer would make payments under the License Agreement pending the outcome of the litigation. Subsequently, plaintiff executed a number of modifications under which plaintiff, in effect, agreed to the withholding of royalties pending final adjudication of the *Christianson* litigation. The District Court's decision was reversed by the Seventh Circuit Court of Appeals on March 22, 1989. *Christianson v. Colt Industries Operating Corp.*, 870 F.2d 1292 (7th Cir.1989). It is agreed that the withheld payments of at least $1.4 million are still unpaid.

On October 7, 1988, plaintiff submitted an invoice to defendant for the payment of royalties from the period January 1, 1985 through June 30, 1988, *i.e.*, $1,410,521.26. On October 11, 1988, plaintiff notified defendant that its failure to make further payments under the License Agreement constituted a repudiation and breach of the License Agreement and that, pursuant to Paragraph XX of the Agreement, the License Agreement was terminated. Despite the foregoing, plaintiff on October 14, 1988 advised defendant that it was certifying its claim for payment pursuant to the Contract Disputes Act of 1978 (CDA). 41 U.S.C. § 601, *et seq.* Subsequent exchanges between the parties indicated no change in position by either plaintiff or defendant. Plaintiff claims the License Agreement has been terminated because of defendant's alleged breaches, including withholding of payments. Defendant denies that it has breached the Agreement and asserts that the same is in full force and effect. This suit followed.

In its complaint filed May 26, 1989, plaintiff seeks declaratory and injunctive relief in four counts, all of which are predicated on plaintiff's claim that defendant by repudiating and breaching the License Agreement through the non-payment of royalties, lost the right to disclose to, or permit the use by others of, plaintiff's trade secrets (Count I); more specifically through the sale of repair parts to Indonesia (Count II); Through the improper transfer of M16s to non-Department of Defense (DOD) agencies such as the Border Patrol (Count III); and through the disclosure of trade secrets to Dynamint Nobel and defendant's failure to notify plaintiff of the M2 bolt improvement (Count IV). *Plaintiff's Complaint*, pp. 16–20. In its application for a preliminary injunction, filed pursuant to Rule 65, Fed.R.Civ.P., plaintiff seeks to prohibit defendant "from disclosing or otherwise using or permitting the use of plaintiff's proprietary know-how, technical data, and trade secrets for manufacture/procurement of the M16, M16A1, and M16A2 rifles, or repair parts for said rifles, from sources other than plaintiff. *Plaintiff's Motion for a Preliminary Injunction*, p. 1.

*Discussion*

Plaintiff's counsel has conceded during oral argument that, if the License Agreement is still in existence, the four separate claims for relief would not be proper claims. Transcript at 7. He also agreed that the basic issue is whether there is a contract or whether the contract has effectively been terminated because of defendant's alleged breaches. Transcript at 7–8. It is defendant's basic contention that the License Agreement is still in existence and that plaintiff's claim of subject matter jurisdiction is in reality based on the License Agreement and, therefore, is within the

exclusive jurisdiction of the United States Claims Court or the Armed Services Board of Contract Appeals under the CDA. 41 U.S.C. §§ 609(a), 606. We agree.

When Congress enacted the CDA in 1978, it provided a comprehensive scheme of remedies to resolve all disputes arising from government contracts. It specifically abolished the jurisdiction of the federal district courts to hear claims on any express or implied contract with the United States subject to the CDA.[1]

 Although the present License Agreement was entered into prior to 1978, the CDA is applicable to contracts entered into prior to the effective date of the Act, when a contractor elects to avail himself of the CDA. *Tuttle/White Constructors, Inc. v. United States,* 656 F.2d 644, 647 (1981). The plaintiff herein made such an election. On October 14, 1988, plaintiff certified its claim for withheld payments "pursuant to the Contract Disputes Act." When it did so, plaintiff elected to have this dispute resolved under the CDA. Once this election of remedies was made to proceed under the CDA, the decision became final. *W.M. Schlosser Co., Inc. v. United States,* 705 F.2d 1336, 1338 (Fed.Cir.1983).

The breach of contract claim for the withholding of royalty payments, which plaintiff has elected to certify under CDA procedures, is the same breach of contract claim which underlies plaintiff's claim for violation of trade secrets. The alleged Trade Secrets Act violation cannot be resolved without addressing the alleged contractual breach. In addition, plaintiff's claims encompass other contractual breaches which do not involve disclosures of trade secrets. The source of the right on which the plaintiff bases these claims is also the License Agreement. *Megapulse, Inc. v. Lewis,* 672 F.2d 959 (D.C.Cir.1982). Having made its election under the CDA, it is clear to us that the provisions of the Tucker Act control, and thus we lack subject matter jurisdiction over plaintiff's claims under the Administrative Procedure Act or

the Trade Secrets Act. Since we do not have jurisdiction, plaintiff has not shown a substantial likelihood of success on the merits. It is not necessary to address plaintiff's compliance with the further criteria governing the grant of preliminary relief. *Washington Metropolitan Area Transit Comm'n v. Holiday Tours,* 559 F.2d 841 (D.C.Cir.1977); *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921 (D.C.Cir.1958).

Based on the foregoing, it is by the Court this 6th day of July, 1989

ORDERED that plaintiff's motion for a preliminary injunction be denied; and it is

FURTHER ORDERED that this case shall stand dismissed.

United States founded upon any express or implied contract with the United States....

---

**1.** 28 U.S.C. § 1346(a)(2) as amended reads:
... the district courts shall not have jurisdiction of any civil action or claim against the