**DANA CORPORATION,**
**Plaintiff–Appellee,**

v.

**IPC LIMITED PARTNERSHIP and International Packing Corp.,**
**Defendants–Appellants.**

**No. 88–1194.**

United States Court of Appeals, Federal Circuit.

Oct. 26, 1988.

Ernie L. Brooks, Brooks & Kushman, Southfield, Mich., argued, for plaintiff-appellee. With him on the brief was Kevin J. Heinl.

R.V. Lupo, Lupo, Lipman & Lever, P.C., Washington, D.C., argued, for defendants-appellants. With him on the brief were Donna M. Tanguay and Mark G. Davis. Also on the brief were Michael R. Dinnin, Robert A. Dunn, Harness, Dickey and Pierce, Birmingham, Mich. and Edward A. Benjamin, Ropes & Gray, Washington, D.C.

Before ARCHER and MICHEL, Circuit Judges, and SKELTON, Senior Circuit Judge.

ARCHER, Circuit Judge.

IPC Limited Partnership and International Packing Corp. (IPC) appeal from the judgment of the United States District Court for the Eastern District of Michigan, holding U.S. Patent 3,498,621 ('621) owned by Dana Corporation (Dana) valid, enforceable and willfully infringed by IPC and awarding damages to Dana.[1] We reverse.

*Background*

The '621 patent, entitled "Valve Stem Seal," issued to R.R. Wilson in 1970 and was assigned to Dana. Dana manufactures and sells the valve stem seals to automobile manufacturers, including General Motors Corporation (GM), for use in the manufacture of automobile engines.

> Claim 1 of the '621 patent recites, in part: In an internal combustion engine having a valve guide and a poppet valve stem, ... a valve stem seal for sealing between said valve stem and said valve guide, comprising a transversely extending portion of elastometric material positioned atop said valve guide...."

The seal, shown in the following figure from the patent, is composed of an elastomeric material and fits tightly atop the valve guide to prevent oil leakage into the cylinders of the engine.

The central cavity of the seal, through which the valve stem extends during use, is defined by walls purposefully scored with threads to permit sufficient oil to remain

---

1. Prior to trying the case on the merits, the district court granted IPC's motion for summary judgment based on laches to the extent that Dana was barred from recovering any pre-suit damages. That decision has not been appealed.

between the valve stem and the seal. The presence of this controlled amount of oil is necessary to lubricate the reciprocating movement between the stem and the seal.

In the mid–1970's, both Dana and IPC began manufacturing and selling valve stem seals to GM, Dana supplying seals under the rights of the '621 patent and IPC supplying seals according to GM's design specification. In accordance with GM's policy, the Dana–GM sales agreement gave GM the right to "second-source" the patented seal, i.e., to seek another vendor to supply GM with Dana's patented seals so long as GM continued to purchase 60% of its seal requirements from Dana. The valve stem seal produced by IPC according to GM's specification is identical to that described in claim 1 of the '621 patent.

In January 1986, Dana filed suit against IPC for infringement of claim 1 of the '621 patent.[2] Although the parties disagree as to which theory of infringement, direct or contributory, was originally pled, the case was tried, over IPC's objection, under 35 U.S.C. § 271(c), contributory infringement. Dana additionally sought increased damages for willful infringement under 35 U.S.C. § 284.

One of the bases on which IPC defended the suit was that the patent was invalid for failure to disclose best mode, *see* 35 U.S.C. § 112, first paragraph, in that Dana did not identify the fluoride surface treatment of the seals, which Mr. Wilson knew was the best mode of carrying out his invention at the time the application was filed.

The district court, on the basis of a general jury verdict, held the '621 patent to be valid, enforceable and willfully infringed by IPC.

IPC filed five motions for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. One of the five JNOV motions was based upon best mode invalidity. The trial court denied each of these JNOV motions, including the requested new trial, in a Memorandum Opinion and Order dated December 7, 1987. IPC appeals from the Judgment and Order of the district court, assigning as error, *inter alia*, the denial of the JNOV motion based on best mode invalidity. Since we hold that the '621 patent is invalid for failure to disclose best mode, it is not necessary to consider IPC's other grounds for appeal.

## OPINION

### (A) Standard of Review

In considering a motion JNOV the trial court must determine (1) whether there is substantial evidence to support the jury's findings and (2) whether those findings are legally sufficient to support the legal conclusion drawn by the jury in reaching its verdict. *Railroad Dynamics, Inc. v. Stucki Co.,* 727 F.2d 1506, 1513, 220 USPQ 929, 936 (Fed.Cir.1984). "Substantial" evidence, as required by the first step, is such relevant evidence, taken from the record as a whole, "as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin–Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). In reviewing the evidence "a court must: (1) consider all the evidence, (2) in a light most favorable to the non-mover; (3) drawing reasonable inferences favorable to the non-mover; (4) without determining credibility of witnesses, and (5) without substituting its choice for that of the jury between conflicting elements in the evidence." *Connell v. Sears Roebuck & Co.,* 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir.1983); *McGill Inc. v. John Zink Co.,* 736 F.2d 666, 672, 221 USPQ 944, 948 (Fed.Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). *See also Morelock v. NCR Corp.,* 586 F.2d 1096, 1104–1105 (6th Cir.1978). The second step allows the trial court to avoid "a miscarriage of justice by reaching, when the rules render it necessary, a legal conclusion different from that of the jury." *Railroad Dynamics, Inc. v. Stucki Co.,* 727 F.2d at 1513, 220 USPQ at 936.

Since each of the determinations discussed above is a question of law, *McGill*

---

2. The testimony indicates that the suit was filed after GM ceased buying seals from Dana.

*Inc. v. John Zink Co.*, 736 F.2d at 672, 221 USPQ at 948, we are governed by the same standard on review. As such, a party seeking reversal of grant or denial of a motion JNOV must convince this court that the trial court erroneously applied one or both of these steps. *Unidisco Inc. v. Schattner*, 824 F.2d 965, 967, 3 USPQ2d 1439, 1441 (Fed.Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988); *D.M.I., Inc. v. Deere & Co.*, 802 F.2d 421, 425, 231 USPQ 276, 278 (Fed.Cir.1986).

(B) Best Mode

■ The pertinent part of 35 U.S.C. § 112, first paragraph, requires that "[t]he specification ... set forth the best mode contemplated by the inventor of carrying out the invention". Best mode is a question of fact. *McGill, Inc. v. John Zink Co.*, 736 F.2d at 676, 221 USPQ at 951. The purpose of the best mode requirement is to ensure that the public, in exchange for the rights given the inventor under the patent laws, obtains from the inventor a full disclosure of the preferred embodiment of the invention. *In re Gay*, 309 F.2d 769, 772, 50 CCPA 725, 135 USPQ 311, 315 (1962).

■ Whether or not a specific disclosure is adequate for best mode purposes is determined by comparing the disclosure with the facts concerning the invention known to the inventor at the time the application was filed. *Spectra–Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1535, 3 USPQ2d 1737, 1745 (Fed.Cir.1987). Since "there is no objective standard by which to judge the adequacy of a best mode disclosure, ... only evidence of 'concealment', whether accidental or intentional, is considered." *Id.* *See also DeGeorge v. Bernier*, 768 F.2d 1318, 1324, 226 USPQ 758, 763 (Fed.Cir. 1985); *In re Sherwood*, 613 F.2d 809, 816, 204 USPQ 537, 544 (CCPA 1980). "Compliance with the best mode requirement exists when an inventor discloses his preferred embodiment." *In re Gay*, 309 F.2d at 772, 135 USPQ at 315.

■ Concerning its best mode JNOV motion, IPC referred to what has been called the "Wilson report" to support its view that the best mode requirement had not been complied with. This document, dated November 16, 1964 (approximately seven months before the filing date of the application), is a test report documenting tests the stated objective of which was "[t]o investigate and determine which design is most effective in controlling leakage and what is the effect of the surface treatment". The test included comparing the effectiveness of five different seal designs,[3] each design being tested both with and without a 60–second fluoride surface treatment. The test conclusions, signed by the inventor, are as follows:

No design was acceptable (max. allowable leakage = 0.75 gm/hr, preferred less than 0.5 gm/hr) when using nontreated rubber. Two designs (409–111F and 409–111H) were quite acceptable at leakage control *with fluoride surface treatment. Surface treatment is necessary to satisfactory performance of seal.* Engine test samples to be ordered from 409–111F and 409–111H designs with fluoride treatment. (Emphasis added.)

In addition, IPC pointed to a letter from the inventor's supervisor to Dana's patent counsel indicating that, upon seeing a draft of the application, Mr. Wilson "raised the point that no reference was made to fluoride treated rubber" in the disclosure. Although the same letter indicated that the disclosure of the fluoride treatment was omitted because Dana felt that it was "not part of the case," this was not further explained in the letter and we have been directed to no evidence at trial to show a basis for nondisclosure. Finally, the evidence establishes that the seals first sold by Dana were fluoride-treated seals corresponding to the Wilson design.

Dana argued that the best mode requirement was satisfied because the "fluoride treatment of Buna–N rubber for seal appli-

---

**3.** The five designs employed in the test differed from one another by the geometry of the threads or grooves in the opening of the seal.

cations was known to the public years before the filing date of the '621 patent application". A technical article from *Rubber Age* magazine and certain expert testimony was cited by Dana as supporting the view that such a treatment was common to the skilled artisan.

In the Memorandum Opinion, the district court concluded that the best mode requirement could be satisfied by reference to what the prior art discloses.[4] By reviewing the jury's verdict under this erroneous view of the law, the district court erred as a matter of law. The best mode requirement is not satisfied by reference to the level of skill in the art, but entails a comparison of the facts known to the inventor regarding the invention at the time the application was filed and the disclosure in the specification. *Spectra–Physics, Inc. v. Coherent, Inc.*, 827 F.2d at 1535, 3 USPQ2d at 1745. Indeed, in expressing this requirement, 35 U.S.C. § 112 states explicitly that disclosure must be made of the best mode "contemplated by the inventor." Accordingly, Dana's argument that the best mode requirement may be met solely by reference to what was known in the prior art is incorrect.

Dana's citation of our opinion in *Spectra–Physics, Inc. v. Coherent, Inc., id.*, does not aid its cause. There we distinguished the enablement requirement, which does consider the level of skill in the art, from the best mode requirement. We stated:

> The essence of the enablement requirement is that a specification shall disclose an invention in such a manner as will enable one skilled in the art to make and utilize it. *Separate and distinct* from enablement is the best mode requirement, the essence of which requires the inventor to disclose the best mode *contemplated by him*, as of the time he executes the application, of carrying out his invention.
>
> . . . .

Enablement looks to placing the subject matter of the claims generally in the possession of the public. If, however, the applicant develops specific instrumentalities or techniques which are recognized at the time of filing as the best way of carrying out the invention, then the best mode requirement imposes an obligation to disclose that information to the public as well. (Emphasis in original.)

*Id.* at 1532, 3 USPQ2d at 1742 (citing *In re Gay*, 309 F.2d 769, 772, 50 CCPA 725, 135 USPQ 311, 315 (1962)).

■ Therefore, the trial court's denial of IPC's JNOV motion on best mode grounds cannot stand because it was based upon an incorrect interpretation of the law. Rather than remand this case for a proper application of the law, however, we are convinced there are sufficient established facts of record to exercise our discretion to determine the merits of IPC's JNOV motion. 5A Moore's Federal Practice ¶ 50.12 (2d ed. 1983). *See Sjolund v. Musland*, 847 F.2d 1573, 1576, 6 USPQ2d 2020, 2023 (Fed.Cir. 1988); *Verdegaal Bros., Inc. v. Union Oil Co. of Cal.*, 814 F.2d 628, 2 USPQ2d 1051 (Fed.Cir.1987). As noted, our review is based upon the same standard that is applicable in the district court. In order to grant IPC's JNOV motion we must determine as a matter of law that, upon the evidence presented at trial, reasonable minds could not have found that the best mode requirement was satisfied. *Morelock v. NCR Corp.*, 586 F.2d at 1104–1105.

The "Wilson report," the in-house letter cited above, and the testimony concerning Dana's first sales of the patented seals are the only pieces of evidence in the record that are probative concerning what the inventor, Mr. Wilson, thought constituted the best mode of his invention. The two documents present uncontroverted and corroborating evidence that, at the time the application for the '621 patent was filed, Mr. Wilson believed that the best way of carrying out his invention included fluoride

---

**4.** The opinion stated that, in order to deny IPC's motion, the court "need only find evidence to support [Dana's] position" that, as the court phrased it, "the flouridation [sic] of nitril rubber is well known to those of ordinary skill in the art."

treating the surface of the valve seals. That this was the best mode at the time is confirmed by the fluoride-treated seals based on the Wilson design first sold by Dana. Having no evidence to the contrary to consider, reasonable minds could not have differed as to whether Mr. Wilson believed that fluoride surface treatment was part of the best mode of carrying out the claimed invention.

Other surface treatments were set out in the specification as useful "in some instances" [5] as follows:

In some instances, the sliding sealing surfaces, such as the internal wall, may be coated with a lubricating material, such as molybdenum disulfide, graphite, or the like, to provide a more slippery surface on the elastomeric material and decrease friction between the seal and the valve stem. The methods of applying such surface coatings are well known and widely used for elastomeric seals.

Nowhere in the specification, however, does the inventor disclose that a fluoride treatment must or even should be applied to the surface of the patented seals as indicated in the "Wilson report".

The established facts clearly show that fluoride surface treatment was the best mode contemplated by the inventor at the time the application for the '621 patent was filed, and that it was not disclosed in the specification. Since the '621 disclosure did not satisfy the best mode requirement of 35 U.S.C. § 112, first paragraph, IPC's JNOV motion on best mode grounds should have been granted and the '621 patent declared invalid.

REVERSED.