**CHEMCAST CORPORATION,**
**Plaintiff–Appellant,**

v.

**ARCO INDUSTRIES CORPORATION,**
**Defendant–Appellee.**

**No. 90–1078.**

United States Court of Appeals,
Federal Circuit.

Sept. 4, 1990.

Neal A. Waldrop, of Neal A. Waldrop & Associates, Troy, Mich., argued for plaintiff-appellant. With him on the brief was Malcolm R. McKinnon.

Jeanne–Marie Buiteweg, of Reising, Ethington, Barnard, Perry & Milton, Troy, Mich., argued for defendant-appellee. With her on the brief was Owen E. Perry.

Before ARCHER and MAYER, Circuit Judges, and GEORGE, District Judge.[*]

## OPINION

MAYER, Circuit Judge.

Chemcast Corporation appeals the judgment of the United States District Court for the Eastern District of Michigan that Claim 6 of United States Patent No. 4,081,-879 ('879 patent), the only claim in suit, is invalid because of the inventor's failure to disclose the best mode as required by 35 U.S.C. § 112. *See* 12 USPQ2d 2005 (1989). We affirm.

### Background

The '879 patent claims a sealing member in the form of a grommet or plug button that is designed to seal an opening in, for example, a sheet metal panel. Claim 6, the only claim in suit, depends from Claim 1.

1. A grommet for sealing an opening in a panel, said grommet comprising an annular base portion having a continuous circumferential and axial extending sealing band surface,

an annular locking portion having a continuous circumferential and axial extending ridge portion approximately the same diameter as said sealing band surface,

said sealing band surface constituting an axial extending continuation of said ridge portion,

said locking portion and said base portion

* Lloyd D. George, District Judge, United States District Court for the District of Nevada, sitting

by designation.

being in contact with each other and integrally bonded together,

said base portion comprising an elastomeric

material and said locking portion being more rigid than said base portion,

whereby when the grommet is installed in a

panel opening, the locking portion is inserted through the opening to a position on the opposite side of the panel from the base portion locking the grommet in place, and said sealing band surface forms a complete seal continuously around the entire inner periphery of the panel opening.

6. The grommet as defined in claim 1 wherein the material forming said base portion has a durometer hardness reading of less than 60 Shore A and the material forming said locking portion has a durometer hardness reading of more than 70 Shore A.[1]

The grommet of Claim 6 is referred to as a dual durometer grommet because it may be composed either of two materials that differ in hardness or of a single material that varies in hardness. In either case, the different hardnesses can be, and for a sufficiently large hardness differential must be, measured with different durometers: Shore A for the softer base portion and Shore D for the harder locking portion. The harder locking portion of the grommet is the focus of this case.

Chemcast and its competitor Arco Industries Corporation are both engaged in the manufacture and sale of sealing members such as grommets, gaskets, and plug buttons. Both sell their products primarily to the automobile industry. Ex–Arco employee Phillip L. Rubright founded Chemcast in 1973 and subsequently conceived of and designed specifically for Oldsmobile, a Chemcast customer, the dual durometer '879 grommet. He filed a patent application together with an assignment of invention to Chemcast in January of 1976; the '879 patent issued in April of 1978.

Chemcast subsequently sued Arco for infringement of Claim 6 of the '879 patent. Arco counterclaimed that the patent was invalid on several grounds, including Rubright's failure to comply with 35 U.S.C. § 112. The district court agreed. It held that, because the '879 patent did not either disclose the best mode contemplated by the inventor of carrying out the invention or particularly point out and distinctly claim the subject matter of the invention, Chemcast could not recover on its claim of infringement. 5 USPQ2d at 1238.

Both parties appealed. We vacated the district court's best mode decision because, in reaching it, the court relied on an incorrect legal standard; reversed the court's holding that Claim 6 did not meet the claim particularity requirements of section 112; and affirmed the judgment on all other issues. *Chemcast Corp. v. Arco Indus. Corp.*, 854 F.2d 1328 (Fed.Cir.1988) (unpublished). We set out the appropriate legal standard for determining compliance with the best mode requirement as follows:

Failure to comply with the best mode requirement amounts to concealing the preferred mode contemplated by the applicant at the time of filing. *See Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384–85, 231 USPQ 81, 94 (Fed.Cir.1986), *cert. denied*, [480

---

1. A device known as a durometer measures the hardness and softness of the materials used in the grommet. The Shore Instrument & Manufacturing Company is a leading manufacturer of durometers used for measuring rubber-like materials. A durometer referred to as a Shore A durometer measures soft, vulcanized rubber and all elastomeric materials, while a Shore D durometer measures rigid materials such as hard rubber and harder grades of plastic. The Shore B and Shore C durometers can be used to measure intermediate hardnesses.

There is some overlap in the range of use of the durometers. A conversion chart is published by the Shore Instruments & Manufacturing Co. which shows that the range of 30 to 100 on the scale of a Shore A durometer corresponds to the range of 6 to 58 on a Shore D durometer. The American Society for Testing Materials (ASTM) sets the standards to [sic, with] which the plastics and rubber industry comply [sic, complies] and recommends that hardnesses above 90 on the Shore A scale be measured with a Shore D durometer for greater accuracy.

*Chemcast Corp. v. Arco Indus. Corp.*, 5 USPQ2d 1225, 1227 (E.D.Mich.1987).

U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792] (1987). In order for a district court to conclude that the best mode requirement is not satisfied, the focus must be, and the district court must determine, that the inventor knew of, i.e., "contemplated," and concealed a better mode than he disclosed. *Id.*, 231 USPQ at 94. The focus for a best mode analysis is not simply on whether the patent discloses the most suitable material for carrying out the claimed invention.

Slip op. at 4. Accordingly, we remanded the case to the district court for a redetermination of the best mode issue.

On remand, the court again invalidated the patent for failure to satisfy the best mode requirement. *Chemcast Corp. v. Arco Indus. Corp.*, 12 USPQ2d 2005 (E.D. Mich.1989). It made 47 factual findings detailing both what, at the time of filing the patent application, Rubright considered to be the best mode of practicing his claimed invention and what the specification as filed disclosed to one of ordinary skill in the art. According to the court, the principal shortcomings of the disclosure were its failure to specify (1) the particular type, (2) the hardness, and (3) the supplier and trade name, of the material used to make the locking portion of the grommet. *Id.* at 2008. Therefore, it held that the application as filed failed adequately to disclose the best mode of practicing the invention contemplated by Rubright. *Id.* Chemcast appeals.

*Discussion*

A.

The first paragraph of 35 U.S.C. § 112 (1982) provides:

*The specification* [A] shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and [B] *shall set forth the best mode contemplated by the inventor of carrying out his invention.*

(emphasis added). We long ago drew and often have focused upon the critical distinction between requirement [A], "enablement," and requirement [B], "best mode."

The essence of portion [A] is that a specification shall disclose an invention in such a manner as will enable one skilled in the art to make and utilize it. *Separate and distinct* from portion [A] is portion [B], the essence of which requires an inventor to disclose the best mode *contemplated by him,* as of the time he executes the application, of carrying out his invention. Manifestly, the sole purpose of this latter requirement is to restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of their inventions which they have in fact conceived.

*In re Gay*, 50 CCPA 725, 309 F.2d 769, 772, 135 USPQ 311, 315 (1962), *quoted in Spectra–Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1532, 3 USPQ2d 1737, 1742 (Fed. Cir.1987); *see Dana Corp. v. IPC Limited Partnership*, 860 F.2d 415, 419, 8 USPQ2d 1692, 1696 (Fed.Cir.1988).

The best mode inquiry focuses on the inventor's state of mind as of the time he filed his application—a subjective, factual question. But this focus is not exclusive. Our statements that "there is no objective standard by which to judge the adequacy of a best mode disclosure," and that "only evidence of concealment (accidental or intentional) is to be considered," *In re Sherwood*, 613 F.2d 809, 816, 204 USPQ 537, 544 (CCPA 1980), *quoted in DeGeorge v. Bernier*, 768 F.2d 1318, 1324, 226 USPQ 758, 763 (Fed.Cir.1985); *see Spectra–Physics*, 827 F.2d at 1535, 3 USPQ2d at 1745, assumed that both the level of skill in the art and the scope of the claimed invention were additional, objective metes and bounds of a best mode disclosure.

▮ Of necessity, the disclosure required by section 112 is directed to those skilled in the art. *Randomex Inc. v. Scopus Corp.*, 849 F.2d 585, 587, 7 USPQ2d 1050, 1053 (Fed.Cir.1988) (citing *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1556,

220 USPQ 303, 315 (Fed.Cir.1983)). Therefore, one must consider the level of skill in the relevant art in determining whether a specification discloses the best mode. We have consistently recognized that whether a best mode disclosure is adequate, that is, whether the inventor concealed a better mode of practicing his invention than he disclosed, is a function of not only what the inventor knew but also how one skilled in the art would have understood his disclosure. *See, e.g., Dana Corp.*, 860 F.2d at 418, 8 USPQ2d at 1696 (best mode requirement violated because inventor failed to disclose whether to use specific surface treatment that he knew was necessary to the satisfactory performance of his invention, even though how to perform the treatment itself was known in the art. "Dana's argument that the best mode requirement may be met *solely* by reference to what was known in the prior art is incorrect.") (emphasis added); *Spectra–Physics*, 827 F.2d at 1536, 3 USPQ2d at 1745 (best mode violated where inventors of laser failed to disclose details of their preferred TiCuSil brazing method which were not contained in the prior art and were "contrary to criteria for the use of TiCuSil as contained in the literature."); *W.L. Gore*, 721 F.2d at 1556, 220 USPQ at 316 (no best mode violation where inventor did not disclose the only mode of calculating stretch rate that he used, because that "mode would have been employed by those of ordinary skill in the art at the time the application was filed. As indicated, Dr. Gore's disclosure must be examined for § 112 compliance in light of knowledge extant in the art on his application filing date."); *Sherwood*, 613 F.2d at 816, 204 USPQ at 544 (no best mode violation where specification disclosed underlying concepts and mathematical equations that, together with "the menial tools known to all who practice th[e] art," would yield the contemplated best mode digital computer program, even though "the inventor had more information in his possession concerning his contemplated best mode than he disclosed in the specification."). Thus, the level of skill in the art is a relevant and necessary consideration in

assessing the adequacy of a best mode disclosure.

■ The other objective limitation on the extent of the disclosure required to comply with the best mode requirement is, of course, the scope of the claimed invention. "It is concealment of the best mode of practicing the *claimed invention* that section 112 ¶ 1 is designed to prohibit." *Randomex*, 849 F.2d at 588, 7 USPQ2d at 1053; *see Christianson v. Colt Indus. Oper. Corp.*, 870 F.2d 1292, 1301, 10 USPQ2d 1352, 1359 (7th Cir.1989) ("Again, the focus of the best mode requirement, as it was with the enablement requirement, is on the *claimed* invention. Thus, before determining whether there is evidence of concealment, the scope of the invention must be delimited.") (citations omitted). Thus, in *Randomex*, the inventor's deliberate concealment of his cleaning fluid formula did not violate the best mode requirement because his "invention neither added nor claimed to add anything to the prior art respecting cleaning fluid." 849 F.2d at 590, 7 USPQ2d at 1054. Similarly, in *Christianson*, the inventor's failure to disclose information that would have enabled the claimed rifle parts to be interchangeable with all M–16 rifle parts did not invalidate his patents because "the best mode for making and using and carrying out the *claimed inventions* [did] not entail or involve either the M–16 rifle or interchangeability." 870 F.2d at 1302, 10 USPQ2d at 1360 (quoting *Christianson v. Colt Indus. Oper. Corp.*, 822 F.2d 1544, 1563, 3 USPQ2d 1241, 1255 (Fed.Cir.1987), *vacated*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)). Finally, in *DeGeorge* we reversed a finding that an inventor's nondisclosure of unclaimed circuitry with which his claimed circuitry interfaced violated the best mode requirement: "Because the properly construed count does not include a word processor, failure to meet the best mode requirement here should not arise from an absence of information on the word processor." 768 F.2d at 1325, 226 USPQ at 763.

■ In short, a proper best mode analysis has two components. The first is

whether, at the time the inventor filed his patent application, he knew of a mode of practicing his claimed invention that he considered to be better than any other. This part of the inquiry is wholly subjective, and resolves whether the inventor must disclose any facts in addition to those sufficient for enablement. If the inventor in fact contemplated such a preferred mode, the second part of the analysis compares what he knew with what he disclosed—is the disclosure adequate to enable one skilled in the art to practice the best mode or, in other words, has the inventor "concealed" his preferred mode from the "public"? Assessing the *adequacy* of the disclosure, as opposed to its *necessity*, is largely an objective inquiry that depends upon the scope of the claimed invention and the level of skill in the art.

■ Notwithstanding the mixed nature of the best mode inquiry, and perhaps because of our routine focus on its subjective portion, we have consistently treated the question as a whole as factual. "Compliance with the best mode requirement, because it depends on the applicant's state of mind, is a question of fact subject to the clearly erroneous standard of review." *Spectra–Physics*, 827 F.2d at 1535, 3 USPQ2d at 1745 (citing *McGill, Inc. v. John Zink Co.*, 736 F.2d 666, 676, 221 USPQ 944, 951 (Fed.Cir.1984)). We adhere to that standard here, and review the district court's best mode determination accordingly.

### B.

Chemcast alleges that the trial court erred in its best mode analysis by failing to focus, as required, on the claimed invention and on whether the inventor, Rubright, concealed a better mode than he disclosed. Neither allegation has any merit.

■ Chemcast first argues that, because the '879 patent does not claim any specific material for making the locking portion of the grommet, Rubright's failure to disclose the particular material that he thought worked the best does not violate the best mode requirement. This argument confuses best mode and enablement. A patent applicant must disclose the *best* mode of carrying out his claimed invention, not merely *a* mode of making and using what is claimed. A specification can be enabling yet fail to disclose an applicant's contemplated best mode. *See Spectra–Physics*, 827 F.2d at 1537, 3 USPQ2d at 1746. Indeed, most of the cases in which we have said that the best mode requirement was violated addressed situations where an inventor failed to disclose non-claimed elements that were nevertheless necessary to practice the best mode of carrying out the claimed invention. *See, e.g., Dana*, 860 F.2d at 419, 8 USPQ2d at 1695 (failure to disclose unclaimed fluoride surface treatment that was necessary for satisfactory performance of claimed seal violated best mode); *Spectra–Physics*, 827 F.2d at 1536, 3 USPQ2d at 1745 (failure to disclose specific braze cycle constituting preferred means of attachment violated best mode even though no particular attachment means claimed).

Moreover, Chemcast is mistaken in its claim interpretation. While the critical limitation of Claim 6 is a hardness differential of 10 points on the Shore A scale between the grommet base and locking portions, and not a particular material type, *some* material meeting both this limitation and that of Claim 1, that "said base portion compris[e] an elastomeric material and said locking portion be[ ] more rigid than said base portion," is claimed. That the claim is broad is no reason to excuse noncompliance with the best mode requirement. Here, the information the applicant is accused of concealing is not merely necessary to practice the claimed invention, as in *Dana* fluoride surface treatment was "necessary to satisfactory performance" of the claimed valve stem seal, 860 F.2d at 418; it also describes the preferred embodiment of a claimed element, as in *Spectra–Physics* the undisclosed braze cycle was the preferred "means for attaching" and "securing" claimed in the patents at issue. 822 F.2d at 1527 n. 2 & 1528 n. 4.

Chemcast's second argument is equally misplaced. The court devoted no fewer than 13 factual findings to what the inven-

tor Rubright knew as of the filing date of the '879 application. Those findings focus, as did the parties, on the type, hardness, and supplier of the material used to make the locking portion of the grommet.[2] The court found that Rubright selected the material for the locking portion, a rigid polyvinyl chloride (PVC) plastisol composition; knew that the preferred hardness of this material was 75 + / − 5 Shore D; and purchased all of the grommet material under the trade name R–4467 from Reynosol Corporation (Reynosol), which had spent 750 man-hours developing the compound specifically for Chemcast. 12 USPQ2d at 2006–08. Furthermore, the court found that at the time the '879 application was filed, the *only* embodiment of the claimed invention known to Rubright was a grommet composed of R–4467, a rigid PVC plastisol composition with a locking portion hardness of 75 + / − 5 Shore D. *Id.* at 2006.

In light of what Rubright knew, the specification, as issued, was manifestly deficient. It disclosed the following:

> The annular locking portion [ ] of the sealing member [ ] is preferably comprised of a rigid castable material, such as a castable resinous material, either a thermoplastic or thermosetting resin, or any mixtures thereof, for example, polyurethane or polyvinyl chloride. The [locking] portion [ ] also should be made of a material that is sufficiently hard and rigid so that it cannot be radially compressed, such as when it is inserted in the opening [ ] in the panel [ ]. Materials having a durometer hardness reading of 70 Shore A or harder are suitable in this regard.

Col. 4, ll.53–63. The material hardness (75 Shore D) and supplier/trade name (Reynosol compound R–4467) are not explicitly disclosed here or anywhere else in the specification.

Nor, in light of the level of skill in the art, are they implicitly disclosed. Given the specification, one skilled in the art simply could not divine Rubright's preferred material hardness. The court found that "the specification of the open-ended range of materials of '70 Shore A or harder' conceals the best mode 75 Shore D material in part because materials of Shore A and Shore D hardnesses are recognized as different types of materials with different classes of physical properties." 12 USPQ2d at 2008. As for the specific supplier and trade name designation of the preferred material, the court found that disclosing a list of generic potential materials was "not an adequate disclosure of the best mode PVC Re[y]nosol Compound R–4467." *Id.*

We agree. That "at least eight other PVC composition suppliers [ ] could have formulated satisfactory materials for the dual durometer grommet," 5 USPQ2d at 1235, does not, as Chemcast urges, excuse Rubright's concealment of his preferred material, and the only one of which he was aware. Again Chemcast confuses enablement and best mode. The question is not whether those skilled in the art could make or use the '879 grommet without knowledge of Reynosol compound R–4467; it is whether they could practice Rubright's contemplated best mode which, the court found, included specifically the Reynosol compound. Rubright knew that Reynosol had developed R–4467 specifically for Chemcast and had expended several months and many hundred man-hours in doing so. 12 USPQ2d at 2007. Because Chemcast used only R–4467, because certain characteristics of the grommet material were claimed elements of the '879 invention, and because Rubright himself did not know the formula, composition, or method of manufacture of R–4467, section 112 obligated Rubright to disclose the specific supplier and trade name of his preferred material.

2. Prior to and at the time the '879 application was filed, Chemcast used a single type of material from a single supplier for both the base (*soft*) and locking (*hard*) portions of the grommet. Since the parties apparently do not dispute that the preferred hardness of the base portion was adequately disclosed, the district court focused, as will we, on the characteristics of the locking portion material.

Other facts Chemcast points to as obviating the need for Rubright's disclosure of "Reynosol R–4467" are simply irrelevant. That Reynosol considered the formulation of R–4467 a trade secret and that it offered the compound only to Chemcast, *id.*, do not bear on the state of Rubright's knowledge or the quality of his disclosure. First, it is undisputed that Rubright did not know either the precise formulation or method of manufacture of R–4467; he knew only that it was a rigid PVC plastisol composition denominated "R–4467" by Reynosol. Whatever the scope of Reynosol's asserted trade secret, to the extent it includes information known by Rubright that he considered part of his preferred mode, section 112 requires that he divulge it. *See White Consol. Indus. v. Vega Servo–Control,* 713 F.2d 788, 791 (Fed.Cir.1983). Second, whether and to whom Reynosol chooses to sell its products cannot control the extent to which Rubright must disclose his best mode. Were this the law, inventors like Rubright could readily circumvent the best mode requirement by concluding sole-user agreements with the suppliers of their preferred materials.

Nor does the fact that Rubright developed his preferred mode with the requirements of a particular customer in mind excuse its concealment; compliance with section 112 does not turn on why or for whom an inventor develops his invention. An inventor need not disclose manufacturing data or the requirements of a particular customer *if* that information is not part of the best mode of practicing the claimed invention, *see Christianson,* 870 F.2d at 1302, 10 USPQ2d at 1360 (citing *Christianson,* 822 F.2d at 1563, 3 USPQ2d at 1255), but the converse also is true. Whether characterizable as "manufacturing data," "customer requirements," or even "trade secrets," information necessary to practice the best mode simply must be disclosed.

Given the specification and the level of skill or understanding in the art, skilled practitioners could neither have known what Rubright's contemplated best mode was nor have carried it out. Indeed, on these facts, they would not even have known where to look. This is not a case, like *Randomex,* where the inventor indiscriminately disclosed his preferred mode along with other possible modes. *See* 849 F.2d at 589, 7 USPQ2d at 1054. Rubright did not disclose his preferred mode *at all.* His preferred material hardness, 75 Shore D, is three hardness scales removed from the 70 Shore A hardness mentioned in the specification. Neither his preferred source, Reynosol Compound R–4467, nor any other is disclosed.

In this situation and on these facts, where the inventor has failed to disclose the only mode he ever contemplated of carrying out his invention, the best mode requirement is violated. *See, e.g., Dana Corp.,* 860 F.2d at 418–20, 8 USPQ2d at 1695 (best mode violated where inventor concealed the only surface treatment used, and consequently the only one known to work, even though he disclosed several others); *Spectra–Physics,* 827 F.2d at 1531, 3 USPQ2d at 1741 (best mode violated where inventors failed to disclose only method of attachment used, a specific TiCuSil brazing cycle. "Because this approach worked, Coherent continued to use TiCuSil and never investigated the moly-manganese process or further experimented with soldering.").

## Conclusion

Accordingly, the judgment of the district court is affirmed.

AFFIRMED