954 F.2d 735
 24 U.S.P.Q.2d 1475
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
ACME RESIN CORPORATION, Plaintiff-Appellant,
v.
ASHLAND OIL, INC., Defendant-Appellee.
 No. 91-1253.
 United States Court of Appeals, Federal Circuit.
 Jan. 30, 1992.
Rehearing Denied March 18, 1992.
Suggestion for Rehearing In Banc Declined
April 22, 1992.
 
 Before MAYER, Circuit Judge, EDWARD S. SMITH, Senior Circuit Judge, and MICHEL, Circuit Judge.
 DECISION
 MICHEL, Circuit Judge.
 
 
 1
 Acme Resin Corporation appeals the summary judgment of the United States district court in favor of Ashland Oil, Inc. in Acme's patent infringement action against Ashland. Acme Resin Corp. v. Ashland Oil, Inc., No. C-2-86-0187 (S.D.Ohio March 15, 1991). The district court held Acme's U.S. Patent No. 4,436,881 ('881) invalid for failure to disclose the best mode of practicing the claimed invention as required by 35 U.S.C. § 112 (1988). Because there is no genuine issue concerning the inventor's knowledge of a better mode of practicing the invention, a foundry resin composition, at the time he filed his patent application or whether he concealed the best mode when he only disclosed a less effective chemical component, we affirm.
 
 DISCUSSION
 
 2
 Ashland moved for summary judgment on the ground that the patentee, Mr. Robert A. Laitar, failed to disclose the best polyisocyanate component of his invention, a foundry resin composition with two basic components and an additive. Ashland alleged that Mr. Laitar knew at the time he filed his patent application in June 1983 that the best polyisocyanate component was BASF M20S. Acme, on the other hand, asserts that it was not known until later that BASF M20S was a better polyisocyanate component than what was disclosed in the patent application.
 
 I. Governing Law
 
 3
 Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court explained in Anderson v. Liberty Lobby, Inc., a court must consider the "materiality" of any facts in dispute and determine if the dispute is "genuine." 477 U.S. 242, 248 (1986).
 
 
 4
 "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. The substantive law on best mode requires an inquiry into: (1) whether the inventor knew of a better mode of practicing the claimed invention, and if he did, (2) whether he concealed the better mode. Chemcast Corp. v. Arco Indus. Corp., 913 F.2d 923, 927-28, 16 USPQ2d 1033, 1036-37 (Fed.Cir.1990). As this court stated in Chemcast, "[t]he best mode inquiry focuses on the inventor's state of mind as of the time he filed his application." Id. at 926, 16 USPQ2d at 1035. Because the "disputed" fact in the instant appeal concerns whether Mr. Laitar knew of a better component at the time he filed his patent application, it is clearly material. Indeed, it is near dispositive of the validity of the patent.
 
 
 5
 As to the genuineness of the dispute, we must determine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. After a careful review of the record on appeal, we conclude that the asserted dispute is not genuine because a reasonable jury could not return a verdict for Acme, the nonmoving party. The evidence conclusively establishes that Mr. Laitar knew of a better mode of practicing the claimed invention at the time he filed his patent application. Indeed, there is no evidence, only argument, pointing in the other direction.
 
 II. Knowledge
 
 6
 The summary judgment evidence consists of an affidavit prepared by Mr. Laitar, his deposition testimony, and his monthly lab reports to his supervisor. In his affidavit, Mr. Laitar stated: "Acme was testing, in March 1983, an improved polyisocyanate manufactured by the German chemical company BASF Aktiengesellschaft. Plans were made in March of 1983 to switch to BASF as the source of polyisocyanate, and those plans were implemented over the next few months." Joint Appendix at 338 (emphasis added). Because the patent application was not filed until June 1983, this statement alone strongly suggests that Mr. Laitar knew of a better mode of practicing the claimed invention at the time he filed his patent application. He knew in March that the better part II component was the German chemical. How long it took for the company to implement that knowledge and whether implementation was completed before the filing date are legally irrelevant.
 
 
 7
 Even earlier, in a January 31, 1983 report, Mr. Laitar indicated that he knew BASF M20S was a better polyisocyanate component:
 
 
 8
 Evaluation of M-20S inhibited polymeric isocyanate from BASF has continued to show promise. 2048 formulations made from this polymeric have been tested on Chevy G.I. and Ford Essex sand and in both cases gave [approximately] 20% improvement in bench life and a larger improvement in crusting resistance.
 
 
 9
 Id. at 601. Mr. Laitar later confirmed the obvious import of this language in his deposition testimony. During Mr. Laitar's deposition, he was questioned about the January 31, 1983 report as follows:
 
 
 10
 Q. I note that in the second paragraph there is reference to an evaluation of the BASF M-20S isocyanate with 2048. And there it gave a bench life improvement of approximately 20 percent; is that not correct?
 
 
 11
 A. Yes.
 
 
 12
 Q. And a larger improvement in crusting resistance; is that correct?
 
 
 13
 A. Yes.
 
 
 14
 Id. at 469. In that same deposition Mr. Laitar was also asked generally about the BASF M20S material:
 
 
 15
 Q. Through that material's use did you obtain increased bench life?
 
 
 16
 A. The M20S had slower curing properties than the regular M20 material or the--or comparable functionality and viscosity polymeric isocyanates.
 
 
 17
 Q. And that led to enhanced bench life properties; is that correct?
 
 
 18
 A. It was an assist, yes, in improving bench life, yes.
 
 
 19
 Q. Did you obtain bench life improvements in the range of 20 percent by the use of that material?
 
 
 20
 A. Again, it would depend on the particular conditions that it were tested under.
 
 
 21
 Q. Under some conditions do you recall such an increase?
 
 
 22
 A. That could be an approximate number, yes.
 
 
 23
 Id. at 468-69. These statements conclusively prove that Mr. Laitar knew of two improved properties from using BASF M20S several months before his patent application was filed. Moreover, bench life and crusting resistance were well-known problems in the foundry resin composition art and could not be considered insignificant.
 
 
 24
 Mr. Laitar had been experimenting for just such improvements. In a December 2, 1982 report, he stated:
 
 
 25
 A sample of less reactive polymeric isocyanate from BASF, Lapronite M-20S, was obtained. Acme Flow formulations made from this polymeric isocyanate have better bench life and crusting properties than those made from lower acidity polymerics. This was found to be the case for both room temperature and elevated temperature and humidity tests.... Should the bench life properties continue to show the same improvement, this material would be the preferred polymeric isocyanate for Acme Flow formulations.
 
 
 26
 Id. at 479. As reported in subsequent months, further tests did confirm M20S as causing the "same improvements."
 
 
 27
 Indeed, in the proceedings before the district court, Acme conceded that "the test data that had been amassed before the patent application was filed did show the BASF material to be better." Id. at 558. When asked by Judge Holschuh why this did not give rise to an obligation for the inventor to disclose it, Acme stated that "the nature of the isocyanate had nothing to do with the invention." Id. Likewise, Acme argued on appeal that it is not required to disclose the best polyisocyanate component because Mr. Laitar's invention was not directed to the polyisocyanate component but merely to a phosphorus additive for a well-known prior art composition of which the polyisocyanate component was only a part. This argument has no merit for it misapprehends the requirements of the case law on best mode.
 
 
 28
 The best mode requirement of 35 U.S.C. § 112 applies to the "claimed invention." Randomex Inc. v. Scopus Corp., 849 F.2d 585, 588, 7 USPQ2d 1050, 1053 (Fed.Cir.1988) (emphasis in original). Claims 6, 17, and 28 of the '881 patent each specifically further limit the polyisocyanate component set forth in the respective independent claims from which they depend. As clearly part of the claimed invention, the best chemical for the polyisocyanate component had to be disclosed. In view of what he claimed, Mr. Laitar's subjective view as to the scope of his invention is legally irrelevant.
 
 
 29
 Consequently, Acme's admission that the pre-filing test data showed BASF M20S to be a better polyisocyanate might alone be dispositive. But, like the district court, we have much more to go on. Mr. Laitar's statements in his affidavit, in his deposition testimony, and in his monthly reports unquestionably establish that there is no genuine issue of fact whether Mr. Laitar knew of a better mode of practicing the invention. They show that not later than March, he knew the German chemical was best.
 
 
 30
 We note that all the evidence Ashland relies on to show that there is no genuine issue of fact are statements by Acme's Mr. Laitar. This is not a case where Ashland's evidence points in one direction and Acme's points in the other, but where Acme's evidence itself establishes the conclusion Ashland espouses. It is also suspect that nowhere in his affidavits, depositions, or reports did Mr. Laitar assert that he did not realize BASF M20S was better or that he did not know it was better until after he filed his patent application. Instead, his statements all indicate that the decision was made to switch to that formulation months prior to filing because it had consistently showed improved properties in repeated tests. Accordingly, the district court properly concluded that the record evidence does not present a genuine issue of fact whether the inventor knew of a better mode of practicing the claimed invention at the time he filed than he disclosed in his patent application.
 
 III. Concealment
 
 31
 Having concluded that the inventor knew of a better mode, it then becomes necessary to determine whether the evidence establishes that the inventor concealed it. Chemcast, 913 F.2d at 928, 16 USPQ2d at 1036-37. "[W]hether the inventor concealed a better mode of practicing his invention than he disclosed, is a function of not only what the inventor knew but also how one skilled in the art would have understood his disclosure." Id. at 927, 16 USPQ2d at 1036. A test for determining whether the inventor has concealed the preferred mode is whether "the disclosure [is] adequate to enable one skilled in the art to practice the best mode." Id. at 928, 16 USPQ2d at 1036.
 
 
 32
 It is undisputed that BASF M20S was not disclosed in the patent. And as set forth supra, there is no genuine issue of fact that Mr. Laitar knew that BASF M20S was better than the polyisocyanate that was disclosed in his patent application, i.e., PAPI-135 made by Upjohn Co. The district court found that "[Mr. Laitar's] failure to disclose the BASF polyisocyanate component in the patent application constituted concealment of his preferred mode from the public and violated the best mode requirement of 35 U.S.C. § 112." Slip op. at 27. Acme has not shown this finding to be clearly erroneous and has not pointed to anything in the record that creates a genuine issue of fact whether the disclosure of PAPI-135 as the preferred polyisocyanate component is adequate to alert one of ordinary skill in the art instead to use BASF M20S, as contemplated by the inventor. Indeed, it is difficult to conceive how disclosing by name a less effective polyisocyanate could enable the artisan to know he should use another more effective one that was not named. Only if the latter's better properties were widely know might this be so. There is no such evidence here. Accordingly, the district court's finding of concealment and conclusion that there is no genuine issue about this, both must stand.
 
 
 33
 Acme argues that it did not approve BASF M20S for commercial sales until July 1983, almost one month after filing the patent application, and thus did not know that BASF M20S was better until after filing the patent application. However, the date Acme officials decided to commercialize the best mode is irrelevant. The relevant inquiry is the date Mr. Laitar, the inventor, knew that BASF M20S was the better mode. Mr. Laitar's affidavit, deposition testimony, and monthly reports show "beyond question," id. at 23, that he knew that BASF M20S was the better mode prior to filing, i.e., not later than March 1983.
 
 
 34
 Acme also argues that because a best mode determination necessarily involves a factual inquiry into the inventor's state of mind, summary judgment is per se improper. This argument ignores the fact that, in this case, the inventor's state of mind was contemporaneously reduced to writing. Mr. Laitar's monthly reports to his supervisor track his evolving state of mind with respect to the effectiveness of BASF M20S. The argument also ignores that nothing in our case law generally precludes disposition of the best mode question on summary judgment where there are no genuine issues of material fact. See Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1580, 18 USPQ2d 1001, 1013 (Fed.Cir.1991) (disposing of best mode issue on summary judgment).
 
 
 35
 Finally, Acme argues that the bench life improvement of the additive component of their resin composition was ten times greater than that achieved by using BASF M20S as the part II component rather than the chemical disclosed. Besides ignoring the improvement in crusting resistance from using M20S, this argument ignores that the part II component is expressly part of the claimed invention. Our case law requires disclosure of the known best mode for practicing all parts of the invention as applicant himself chose to claim it. That was clearly not done here.