**BRISTOL–MYERS SQUIBB CO., Plaintiff,**

v.

**BOEHRINGER INGELHEIM CORP., Ben Venue Laboratories, Inc., and Bedford Laboratories, Defendants.**

**No. CIV. A. 97–6050 (WHW).**

United States District Court, D. New Jersey.

March 1, 2000.

Andrew T. Berry, McCarter & English, Newark, NJ, for Bristol–Meyers Squibb Co.

H. Curtis Meanor, Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, PC, Newark, NJ, for Ben Venue Laboratories, Inc., Bedford Laboratories.

## OPINION

WALLS, District Judge.

Plaintiff Bristol–Myers Squibb ("Bristol") brings this motion for summary judgment to dismiss defendants' best mode defense under 35 U.S.C. § 112. Ben Venue opposes the motion. Bristol's motion is denied.

### Background[1]

This motion centers on the relevance of purified Cremaphor (also called "Sandoz Cremaphor") to the two patents in suit, United States Patents 5,670,537 ("'537 patent") and 5,641,803 ("'803 patent"). The issue is whether Bristol was required by statute to disclose that it used purified Cremaphor to produce the taxol infusion[2] to be parenterally administered[3] under the patented dosage ranges and infusion duration. The only carrier liquid for taxol disclosed in the specification(s) of the two disputed patents is unpurified Cremaphor (also called Cremaphor EL or BASF Cremaphor).

According to Bristol, defendants fail to demonstrate that the "best mode provision" of 35 U.S.C. § 112 applies to the alleged non-disclosure of Sandoz Cremaphor. Bristol contends that (1) the claimed inventions do not include or require the use of any type of Cremaphor and (2) utilizing purified Cremaphor as the carrier liquid is not necessary to carry out the claimed inventions because purified Cremaphor merely extends the shelf-life of taxol. Finally, Bristol contends that the defense would fail even if the Court were to conclude that 35 U.S.C. § 112 is applicable to the alleged non-disclosure because the inventors did not contemplate that purified Cremaphor was the best mode of practicing the invention at the time the patents were filed (August 3, 1992).

Ben Venue first asks the Court to defer ruling on this motion because discovery has not yet ended (Fed.R.Civ.P. 56(f)). The Court issued an Order at the end of December (December 28 Order) which reversed Magistrate Judge Pisano's denial of Cremaphor-related discovery. Ben Venue contends that discovery requests by both sides are still pending and that it has not completed certain depositions.

Ben Venue next argues that both patents include a claim limitation which requires the taxol to be parenterally administered via infusion. *See, e.g.,* '803 patent ("a method ... comprising parenterally administering" taxol); '537 patent ("a method ... comprising ... (ii) parenterally administering" taxol). According to Ben Venue, then, because "the only liquid that Bristol as ever used for 'parenterally

1. For additional background, see *Bristol–Myers Squibb v. Zenith Goldline Pharm., et al.,* Nos. 97–6050 & 98–1412, slip op. (D.N.J. Jan. 20, 2000).

2. In its "raw" form, taxol is a powder. It must be dissolved in a liquid to be administered via injection.

3. The introduction of substances into an organism by intravenous, subcutaneous, intramuscular, or intermedullary injection. *Stedman's Medical Dictionary* 1300 (26th ed.1995).

administering' taxol is a mixture of purified Cremaphor EL and alcohol," it was the inventor's "best mode" of carrying out the infusion limitation.

Further, even if parenterally administering taxol is not a claim limitation, Ben Venue claims that § 112 applies. Ben Venue argues that Bristol erroneously narrows the scope of the defense by confining it only to those elements of the invention mentioned literally in the claims. It argues that even nonclaimed elements of an invention must be disclosed if they are "necessary to practice the best mode of carrying out the invention." Here, Ben Venue asserts that in order to best "parenterally administer" taxol, it must be dissolved in purified Cremaphor. The company cites to various Bristol documents which it contends, show that (1) "Bristol acknowledged that it had tried to find other vehicles" to administer taxol; (2) "the use of Cremaphor ... proved to be unavoidable;" and, (3) "the Cremaphor Bristol had unavoidably used was 'cleaned,' i.e. purified, Cremaphor." Ben Venue Brf. at 5 (referencing BMS00262731–32, New Drug App. & BMS00218753, Taxol Pharm. Rep.).

In reply, Bristol contends that (1) it has complied fully with the Court's December 28 Order and that the only remaining discovery concerns irrelevant documents dated more than four years after the two patents were filed; (2) Cremaphor, purified or otherwise, is not an element of the claims; (3) Ben Venue has not presented any evidence to show that purified Cremaphor is or was necessary to practice the claimed inventions; and (4) Ben Venue cannot demonstrate that the inventors ever considered the use of purified Cremaphor as part of the best mode to carry out the low-dose patents.

### Best Mode Analysis

Under 35 U.S.C. § 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it ... and shall set forth the best mode contemplated by the inventor of carrying out his invention.

"The best mode requirement is intended to ensure that a patent applicant plays fair and square with the patent system .... [o]ne must not receive the right to exclude others unless at the time of filing one has provided an adequate disclosure of the best mode known to him or her of carrying out the invention." Robert L. Harmon, *Patents and the Federal Circuit* § 5.3 (4th ed.1999) (citing *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200 (Fed.Cir.1991)).

■ The threshold issue, according to Bristol, is whether the statute covers elements not specifically claimed by the inventions. In general, "[t]he best mode inquiry is directed to what the applicant regards as the invention, which in turn, is measured by the claims." *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1532 (Fed.Cir.1991). Unclaimed elements, however, "may also be subject to the [best mode] requirement if they are *necessary to implement the claimed invention.*" *Access Solutions Int'l, Inc. v. Data/Ware Develop., Inc.*, 70 F.Supp.2d 92, 98 (D.R.I. 1999) (emphasis added). The Federal Circuit concurs: "Indeed, most of the cases in which we have said that the best mode requirement was violated addressed situations where an inventor failed to disclose non-claimed elements that were nevertheless necessary to practice the best mode of carrying out the claimed invention." *See Chemcast Corporation v. Arco Indus. Corp.*, 913 F.2d 923, 928 (Fed.Cir.1990). Thus, the best mode defense is not confined to claim limitations.

■ There are boundaries to this defense. The Federal Circuit cautions that "an inventor is not required to supply [all] production specifications." *See Wahl Instruments v. Acvious, Inc.*, 950 F.2d 1575, 1579 (Fed.Cir.1991).

Indeed, the inventor's manufacturing materials or sources ... used to make a device may vary from wholly irrelevant to critical. For example, if the inventor

develops or knows of a particular method of making which substantially improves the *operation or effectiveness* of his invention, failure to disclose such peripheral development may well lead to invalidity.

*Id.* (emphasis added). There, the Court found that information missing in the patent application "was no more than a routine manufacturing choice" and concluded that there was no evidence that "the working of the invention .... was affected in any way by" the type of material used to join the two halves of the invention. *Id.* This holding embodies the general rule that a best mode violation exists only where the undisclosed method affects "how well [the invention] works." *See Advanced Semiconductor Materials America, Inc. v. Applied Materials, Inc.,* 922 F.Supp. 1439, 1443 (N.D.Cal.1996); *see also Zygo Corp. v. Wyko Corp.,* 79 F.3d 1563, 1567 (Fed. Cir.1996) (finding that failure to describe packaging of invention for commercial use was not a violation of § 112).

■ This Court concludes that there are a number of genuine issues of material fact which preclude summary judgment on this issue. Preliminarily, it is disputed whether purified Cremaphor "improves the operation or effectiveness of" taxol infusions. *See Wahl Instruments,* 950 F.2d at 1579. As stated, Bristol submits studies which indicate that, in 1991,[4] the only concern for using purified Cremaphor was to prolong shelf-life. Bristol argues that when stored at 4°C, a BASF Cremaphor/taxol mixture retains its potency for up to 18 months; at room temperature it lasts for 86 days (Agharkar Decl. ¶ 12). Ben Venue, however, submits materials which indicate that shelf-life may not have been the inventor's only reason for relying on Sandoz Cremaphor. For example, a November 1990 memorandum received by

at least one inventor states: the "source of Cremaphor was important—material from Sandoz is satisfactory, whereas materials from other suppliers is not. The reason for this will be investigated." *See* Nov. 19, 1990 Taxol Team Mtg. Mem., Alper Ex. 5, BMS572439; *see also* May 21, 1991 Mem., Alper Ex. 5, BMS573014 ("*Lot 84240 was the only lot made with crude BASF Cremaphor .... NCI believes the drop in potency was real .... Cremaphor interferes with the HPLC assay ....*")(emphasis added). Ben Venue's submissions prevent this Court from now ruling that the chemical had nothing to do with the "operation or effectiveness" of the two patented inventions.

■ The remaining disputed issues go to the merits of the anticipated defense: A defendant relying on the "best mode" defense must prove: (1) that the "inventor knew of a mode of practicing the claimed invention that he considered to be better than any other at the time he filed his application" and (2) that the inventors failed to adequately disclose this preferred embodiment of the invention. *See generally Transco Prod., Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 560 (Fed. Cir.1994). "Notwithstanding the mixed [law and fact] nature of the best mode inquiry, and perhaps because of its routine focus upon its subjective component, the courts treat the question as a whole as factual." Robert L. Harmon, *Patents and the Federal Circuit* § 5.3 (4th ed.1999) (citing *Chemcast Corp. v. Arco Indus.,* 913 F.2d 923 (Fed.Cir.1990)).

Here, the parties hotly dispute whether the inventors (at the time of application) considered purified Cremaphor the "best" way of carrying out their inventions. Bristol submits deposition testimony of Drs. Canetta and Rozencweig (two of the three

---

4. The best mode defense looks to what the inventors believed to be the best mode of carrying out the invention *at the time the patent application was filed. See Shearing v. Iolab Corp.,* 975 F.2d 1541, 1545 (Fed.Cir. 1992). Ben Venue's references to documents from 1997, then, are disregarded. Additionally, the Court will not defer ruling on this motion while Ben Venue conducts discovery into what Bristol did (or did not) know in the post-application period.

inventors) who state that purification of Cremaphor was and is outside their field of expertise. This is challenged by Ben Venue, which references the various memoranda distributed to the inventors at or near the time they filed the patent applications addressing the use of only purified Cremaphor in the taxol infusion. *See, e.g.* Alper Ex. 5. Ben Venue also submits Bristol's New Drug Application, dated July 21, 1992, which indicates that the company intended to continue drug development using only the purified form of Cremaphor. Alper Ex. 4. These documents raise a genuine issue of material fact about what the inventors knew or did not know about the use of Cremaphor at the time the patent application was filed. Accordingly, Bristol's motion to strike defendants' best mode defense is denied.

Conclusion

For the reasons stated, Bristol's motion for summary judgment is denied.

ORDER

This matter is before the Court on the motion of plaintiff Bristol–Myers Squibb Corporation's motion for summary judgment to dismiss defendants' best mode defense under 35 U.S.C. § 112. Having heard oral argument on February 22, 2000, considered the submissions of the parties, and for good cause shown,

It is on this day of February, 2000,

ORDERED that Bristol–Myers Squibb's motion is denied.