JOY TECHNOLOGIES, INC., Plaintiff,

and

A/S Niro Atomizer, Involuntary Plaintiff,

v.

FLAKT, INC:, Defendant.

Civ. A. No. 89–533–JJF.

United States District Court, D. Delaware.

March 31, 1993.

Collins J. Seitz, Jr., of Connolly Bove Lodge & Hutz, Wilmington, DE, Robert A. Schroeder, Edward G. Poplawski, and Joseph T. Jakubek, of Pretty Schroeder Brueggemann & Clark, Los Angeles, CA, for plaintiff.

Allen M. Terrell, Jr., and Frederick L. Cottrell, III, of Richards Layton & Finger, Wilmington, DE, Paul Lempel, and Lynne Darcy, of Kenyon & Kenyon, New York City, for defendant.

### MEMORANDUM OPINION

FARNAN, District Judge.

Pending before the Court is Flakt, Inc.'s ("Flakt") Motion for Judgment as a Matter of Law pursuant to Fed.R.Civ.P. 50(b) and, in the alternative, Flakt's Motion for a New Trial pursuant to Fed.R.Civ.P. 59. Flakt contends that the jury verdict in this patent infringement action cannot be justified based on the evidence adduced at trial and, therefore, Flakt argues it is entitled to a judgment as a matter of law or a new trial.

### I. BACKGROUND

Joy Technologies, Inc. ("Joy") filed this action against Flakt in 1989 alleging that Flakt was infringing U.S. Patent No. 4,279,-873 (the " '873 patent"). The case was tried to a jury and on January 24, 1992 the jury returned a verdict in favor of Joy on all issues. Further, the jury responded favorably for Joy to all written interrogatories submitted to them. In so doing, the jury found that Flakt's dry flue gas desulfurization (FGD) processes carried out in plants built by Flakt infringed the '873 patent, which covers a process for removing sulfur dioxide from the flue gas that results from the combustion of sulfur-containing fuel such as coal. The jury also found that Flakt induced and contributed to the infringement of the '873 patent.

For the reasons stated below, Flakt's Motion for a Judgment as a Matter of Law will be denied, as will its Motion for a New Trial.

### II. LEGAL STANDARDS

The applicable legal standards for the two post trial motions are as provided below.

#### A. Judgment as a Matter of Law

Recently, in Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1237 (3d Cir.1993) the United States Court of Appeals for the Third Circuit set out the following standard to be used in determining if a judgment as a matter of law should be granted:

Such a motion should be granted only if, "viewing all the evidence which has been tendered and should have been admitted in the light most favorable to the party opposing the motion, no jury could decide in that party's favor." Indian Coffee Corp. v. Procter & Gamble Co., 752 F.2d 891, 894 (3d Cir.), cert. denied, 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985).

Although judgment as a matter of law should be granted sparingly, "federal courts do not follow the rule that a scintilla of evidence is enough. The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Patzig v. O'Neil,* 577 F.2d 841, 846 (3d Cir.1978) (citation omitted) (quotation omitted).

*Id.*

Further, in *Williamson v. Consolidated Rail,* 926 F.2d 1344 (3d Cir.1991) the following guidance was provided:

[w]e examine the record to determine whether the evidence presented was sufficient to permit the jury to find ... [for the plaintiff] ... When reviewing the jury's finding [for the plaintiff on a factual issue], we give him, as the verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him. (citations omitted).

*Id.* at 1347.

▮▮▮ Therefore, the Court is required to determine if the verdict, when all evidence is viewed in the light most favorable to Joy, is supported by substantial evidence. *Schering Corp. v. Precision–Cosmet Co., Inc.,* 614 F.Supp. 1368, 1371 (D.Del.1985); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1571 (Fed.Cir.1986) *citing Shatterproof Glass Corp. v. Libbey–Owens Fork Co.,* 758 F.2d 613, 619 (Fed.Cir.) *cert. dismissed* 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985). "Substantial evidence" has been defined as relevant evidence from the record which, when reviewed as a whole, would reasonably support the jury's finding under review. *Verdegaal Bros., Inc. v. Union Oil Co.,* 814 F.2d 628, 631 (Fed.Cir.), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987) *Perkin–Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 893 (Fed.Cir.) *cert. denied* 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). Further, substantial evidence does not refer to the amount of evidence proffered but rather to the substance or nature of the evidence and whether that evidence would reasonably support the jury's verdict. *Id.* Finally, the court is not in a position on a post trial motion to weigh evidence, pass on credibility issues or substitute its judgment for that of the jury, rather the task is merely to determine if the evidence reasonably supports the verdict. *Aloe Coal Co. v. Clark Equipment Co.,* 816 F.2d 110, 113 (3d Cir.) *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987).

## B. Motion for a New Trial Pursuant to Rule 59

▮▮▮ The decision to grant a new trial is in the discretion of the Court, *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980); *Gumbs v. Pueblo Int'l, Inc.,* 823 F.2d 768, 771 (3d Cir.1987). A jury verdict is not to be set aside merely on the basis of the Court substituting its judgment for that of the jury. *Belardinelli v. Carroll,* 773 F.Supp. 657, 659 (D.Del.1991) *citing, Carpenter v. Koehring Co.,* 391 F.Supp. 206 (E.D.Pa.1975), *aff'd,* 527 F.2d 644 (3d Cir.1976). Rather, the verdict must be permitted to stand if it is supported by evidence so long as nothing suggests that the decision was guided by partiality, prejudice, mistake or corruption. *Id.* Only if the verdict is so unreasonable as to offend the conscience of the Court should the Court disturb the verdict. *Motter v. Everest & Jennings, Inc.,* 883 F.2d 1223, 1230 (3d Cir. 1989). As previously stated by a court in this district:

[T]he trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts, and abstain from interfering with the verdict unless it is quite clear that the jury reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not. *quoting Lind v. Schenley Industries, Inc.,* 278 F.2d 79, 89 (3d Cir.), *cert. denied,* 364 U.S.

835 [81 S.Ct. 58, 5 L.Ed.2d 60] (1960) *(quoting,* 6 J. Moore, Moore's Federal Practice, (2d ed.) p. 3819).

*Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.,* 576 F.Supp. 107, 124 (D.Del.1983), *aff'd, Appeal of Chase Manhattan Overseas Banking Corp.,* 740 F.2d 956 (3d Cir.1984); *Appeal of Holiday Inns, Inc.,* 740 F.2d 957 (3d Cir.1984), and *Appeal of Rose Hall Ltd.,* 740 F.2d 958 (3d Cir.1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985).

More recently, the United States Court of Appeals for the Third Circuit in *EEOC v. State of Del. Dept. of Health and Social Services,* 865 F.2d 1408, 1413 (3d Cir.1989) stated that for the motion to be properly granted it

"must ensure that the trial court has not simply substituted its judgment of the facts and the credibility of the witnesses for those of the jury; in other words, the new trial must be necessary to avoid a miscarriage of justice" (quoting *Shanno v. Magee Indus. Enterprises, Inc.,* 856 F.2d 562, 567 (3d Cir.1988) (citations omitted)).

Thus, only if a new trial is required to assure that justice is served should a court grant a motion for a new trial. Otherwise, a verdict must stand.

### III. ISSUES PRESENTED

As a general supposition, Flakt asserts that they are entitled to a judgment as a matter of law because the record reflects a legally insufficient basis from which a reasonable jury could have concluded that Flakt was infringing the '873 patent or that the patent was valid. With respect to a new trial, Flakt argues manifest injustice has resulted because the verdict is against the weight of the evidence. On its behalf, Joy contends that the record is sufficient for the verdict to be upheld against all the grounds asserted by Flakt. The Court will separately review each ground asserted by Flakt and Joy's response.

### IV. DISCUSSION

#### A. Infringement: Literal and Doctrine of Equivalents

Flakt claims that the jury's verdict of infringement under either literal infringement or the doctrine of equivalents must be set aside and judgment entered in Flakt's favor with respect to both claim 1 and claim 2 of the '873 patent. According to Flakt:

In finding that certain Flakt dry FGD processes infringe claims 1 and 2 of the '873 patent, the jury either misinterpreted those claims with respect to the crucial temperature control limitations, or misunderstood the undisputed evidence of how the Flakt processes work.

(Docket Item 362, p. 9).

With respect to claim 1, Flakt argues that where there is no dispute as to facts, the Court must construe the claims to insure that the law is correctly applied. According to Flakt, there was no factual dispute to be resolved by the jury in this case and the undisputed evidence at trial provided the only possible interpretation of the claim. Further, according to Flakt, even if Joy's interpretation of the claims is credited, Flakt's process cannot be found to infringe.

Joy agrees that the construction of a patent claim is a question of law, but argues that the decision of whether the properly construed claim covers the accused device or system is a question of fact for the jury. Joy argues that the jury based its findings on a proper legal interpretation of the claims, and thus the jury's verdict must stand.

■ The Court concludes that the determination of literal infringement involves both a question of law and a question of fact. First, the construction of the patent claims is a question of law. *LaBounty Mfg. Inc. v. United States International Trade Commission,* 867 F.2d 1572, 1574 (Fed.Cir.1989). The patent's specifications, claim language, and prosecution history should all be used to construe the claims. *McGill, Inc. v. John Zink Inc. Co.,* 736 F.2d 666, 672 (Fed.Cir. 1984). However, subsumed in the construction of the claims may be factual disputes which will be resolved by the trier of fact and will be reviewed only as a finding of fact. *Id.* Further, once the claims have been properly construed, the question of infringement is a

factual one involving the application of facts to properly construed claims. *Id.*

### 1. Claim 1 of the '873 Patent

Claim 1 of the '873 patent reads:

... the amount of said suspension [*i.e.,* the feed suspension that contains Ca (OH)2 and fly ash and is atomized in the spray dryer] and the water content thereof being adjusted to obtain a temperature of the desulfurized flue gas being 8–40°C above the saturation temperature of said gas.....

■ Flakt contends that the language of Claim 1 requires that the exit temperature of the spray dryer be maintained by independently adjusting two parameters: (1) the "amount" of the feed suspension, and (2) its water content. Flakt argues that its process does not, and cannot, infringe Claim 1 because the water content of the feed suspension is not adjusted in order to maintain the exit temperature. Flakt contends that the water content in its system is permanently kept at a preset value and is not changed regardless of fluctuations in exit temperature.

Joy responds that even if Flakt's interpretation of Claim 1 is accepted, the Flakt process still would infringe because the water content of the feed suspension is adjusted in relation to the exit temperature. Mr. Fiedler, an expert witness for Flakt, admitted on cross examination that if the exit temperature in a Flakt system changed, the volume of slurry entering the atomizer would change. Tr. at 748. Mr. Fiedler explained further that the change in volume of slurry causes a change in the level of the tank, which in turn results in a change in the rate of flow of lime, recycled ash and water into the mixing tank. *Id.* Thus, a change in temperature may ultimately result in an increase in the water used in the process. Mr. Neuscheler, Joy's witness, confirmed the fact that the Flakt systems varied the amount of water in the slurry mixture in order to control changes in exit temperature. Tr. at 584. Finally, the Operation and Maintenance Manual Flakt supplied to the Grand River Dam Authority stated that the quantities of water, recycle and lime slurry that are added

to the reactor feed tank are determined by the system's operating parameters (which includes temperature) at any given moment. Pl.Ex. 135.

On this record, the Court concludes that there was substantial evidence to support the jury's finding that Flakt's system literally infringed Claim 1 of the '873 patent by adjusting the water content of the slurry in response to exit temperature changes.

### 2. Claim 2 of the '873 Patent

Claim 2 of the '873 patents reads as follows:

while maintaining the temperature of the flue gas effluent from said drying chamber at from about 8° to about 40° C. above the adiabatic saturation temperature of said gas by controlling the amount of feed suspension forwarded to said drying chamber and the total solids content of said feed suspension, in response to the amount, temperature and moisture content of the flue gas feed in said drying chamber.

■ Flakt asserts that Claim 2 defines the method of maintaining the exit temperature during operation. Flakt alleges that Claim 2 requires control of the same two variables of Claim 1: amount of feed suspension fed into the spray dryer and its water content. Flakt contends that its system does not infringe Claim 2 because the water content is never changed and the exit temperature is maintained solely by adjusting the flow rate of the feed suspension. Flakt admits that the total solids content of the feed suspension is continuously monitored and the lime and dry product feed into the mixing tank are adjusted to keep the solids content as constant as possible. Flakt argues, however, that its systems do not measure the amount, temperature and moisture content of the flue gas within the spray dryer and thus cannot be found to infringe.

Joy answers that there was substantial evidence for the jury to find that Flakt's systems do control the exit temperature through control of the feed suspension and the solids content of that feed suspension. Joy argues that Flakt's system is controlled by the outlet temperature which is itself a

measurement of the three internal chambers factors. Mr. Neuscheler testified that Claim 2 does not require the separate measurements of the three internal chamber factors but only that the exit temperature be determined by those three factors. Tr. 609–610. He further testified that the parameters inside the chamber are often difficult to measure and thus the system is designed to measure the outlet temperature which is a product of the three internal chambers factors. Tr. 608–609.

On the above record, the Court concludes that there was substantial evidence to support the jury's finding that Flakt's system, by measuring the outlet temperature and adjusting the flow and amounts of feed suspension[1], literally infringes Claim 2 of the '873 patent.

### 3. Infringement of Claims 1 and 2 of the '873 Patent under the Doctrine of Equivalents

Flakt argues that the jury's verdict of infringement under the doctrine of equivalents is not supported by any evidence. Flakt contends that the witnesses on which Joy relies for proof of infringement under the doctrine of equivalents never stated that the Flakt process was equivalent to the process claimed in the patent. Joy contends that there is no dispute that the Flakt system performs substantially the same function and achieves substantially the same result as the patented invention. However, Joy asserts that the Flakt process also performs in substantially the same way as the Joy process because every limitation of the claims is met, either exactly or by a substantial equivalent.

■ In order to find infringement under the doctrine of equivalents, the accused system must perform (1) substantially the same function, (2) in substantially the same way, (3) to achieve substantially the same result as the patented invention. *LaBounty Mfg., Inc.* 867 F.2d 1572, 1577 *citing, Graver Tank and Mfg. v. Linde Air Prods. Co.*, 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). The Federal Circuit has held that all three factors must be addressed with particularized testimony which links the testimony with the doctrine of equivalents. *Lear Siegler Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1426 (Fed.Cir.1989). However, a finding of infringement under the doctrine of equivalents does not require complete identity for every purpose and in every respect. *Graver Tank* at 339 U.S. at 609, 70 S.Ct. at 856.

■ The Court finds that there was substantial evidence to support the jury's finding that the Flakt process infringed under the doctrine of equivalents. Mr. Witherspoon testified that although every part of each claim may not be literally present, the process may still be found to infringe under the doctrine of equivalence. Tr. at 1514–15. Mr. Witherspoon defined the term "equivalence" for the jury. Tr. 1515. There was also considerable testimony on how the Flakt processes work and how they are similar to the patented processes.

The Court notes that while there may not have been repeated references to the doctrine of equivalents, the disputed limitations were few in number and thus the jury received extensive testimony on the two processes and how they related to the small portion of the patent at issue. Thus, the Court concludes that the jury's finding of infringement under the doctrine of equivalents was supported by substantial evidence and should not be disturbed.

### 4. General Argument of Non–Infringement

■ Finally, Flakt argues that it is not in the business of carrying out the process rather it designs and builds plants for others. Several such plants have been contracted for but as yet not built and therefore not operational. According to Flakt, because the patent claims a process and not a system or apparatus it cannot be infringed except by the operation of a process. Further, Flakt contends that because it only builds the plants, its liability, if any, can only be for inducing infringement or contributory in-

---

**1.** See the Court's findings above with respect to literal infringement of Claim 1 which requires

control of the amount of feed suspension and its water content.

fringement and then only if a Flakt-built plant carries out the infringing process. Flakt asserts it cannot be held liable for infringement on account of the unbuilt plants unless or until they actually carry out the patented process. If they are operated so as *not* to use that process, then Flakt reasons it cannot be liable, regardless of whether the plants currently are designed to be able to use the process. (See opening brief p. 23)

Joy cites the Court to its papers filed in connection with its application for a permanent injunction as to why the Flakt systems which are not yet operational do infringe the '873 patent as found by the jury.

The Court concludes that consistent with the Court's prior rulings there is a basis for finding infringement based on unbuilt plants for which contracts exist. The Court is persuaded that since Flakt has the right by virtue of a contract to control the construction, production and sale of a system which will practice the patented process, Flakt can be held liable for infringement for an unbuilt plant.

### B. Validity of '873 Patent—Best Mode Issue

Flakt contends that the '873 patent is invalid because both Niro and Joy concealed the best mode of practicing the patented process. Flakt argues that the size of the droplet produced through atomization and the tip speed of the atomization wheel are both essential factors to the success of the patented process but neither was mentioned in the patent. Flakt contends that Joy decided to keep this information as a trade secret and not disclose it in the patent application.

Flakt begins its analysis by reviewing the differing testimony offered by the parties and claims that the only possible conclusion is that the relevant information was concealed at the time the patent application was filed. Taking the information presented in the light most favorable to Joy, Flakt contends that the disclosure of the "atomizer wheel may describe the type of atomizer wheel that will prolong the duration of a particular degree of atomization once that degree of atomization has been attained." It

does not, however, disclose the degree of atomization that composes the best method.

In response, Joy contends that the best mode argument is only applicable if, when an inventor executes a patent application, he has contemplated a best mode for carrying out the invention. Joy contends that Flakt has failed to meet its burden of showing that the three inventors had a best mode in mind at the time they filed their application. Therefore, whether the inventors actually contemplated such a best mode must first be considered. This is a subjective inquiry and is a question of fact subject to the clearly erroneous standard of review.

Joy also argues that there was no evidence that any of the inventors contemplated that one tip speed was generally superior to others.

Section 112 of the Patent Act requires that the patent specification "set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112 (1984). Section 112's requirement has been interpreted to require the disclosure of the best mode subjectively contemplated by the inventor, not the objective best mode. 2 Donald Chisum, Patents, § 7.05[1] (1992). The best mode requirement prevents inventors from applying for patents while concealing from the public the preferred or best mode of the invention. *Dana Corp. v. IPC Limited Partnership,* 860 F.2d 415, 418 (Fed.Cir.1988). The requirement is subjective in that it requires a finding of the inventor's subjective knowledge at the time of the patent application. *Id.* To determine whether a best mode has been disclosed the trier of fact must compare the disclosure made in the patent and the facts known to the inventor at the time of the patent application. *Id.* It may be found that the inventor did not contemplate any best mode and thus there could be no duty to disclose a best mode. *Amgen, Inc. v. Chugai Pharmaceutical Co.,* 927 F.2d 1200, 1209 (Fed.Cir.1991).

In support of its position, Flakt relies on the deposition testimony given by Mr. Felsvang which indicated that information regarding the degree of atomization used in

the patented process is critical but is not found in the patent. Tr. at 218–219. Joy points out, however, that at trial Mr. Felsvang testified that during the next day of his deposition he indicated to Flakt's counsel that he had made a mistake in his recollection. Tr. 210. Mr. Felsvang testified that he told Flakt's counsel that after reading the patent again he realized that the information was contained in the patent. *Id.* Mr. Felsvang went on to testify at trial that the information relating to the degree of atomization required for successful completion of the process can be found in British patent No. 1,276,000 which was incorporated by reference in the '873 patent. Tr. 211–212. Flakt's expert, Professor Harriott, admitted that the British patent referred to a book by a Mr. Masters which was commonly used in the spray drying area and which described how to affect the degree of atomization by using an abrasion wheel. Tr. 950.

Flakt further argues that the patent does not contain information relating to the tip speed of the atomizer which also affects the degree of atomization. However, Flakt has failed to present any evidence that Mr. Felsvang or the other two co-inventors had found any specific tip speed to be more successful. Flakt's own expert, Professor Harriott, testified that in actual practice spray dryers are adjusted by experimentation with the individual machine and not by calculations relating to tip speeds. Tr. at 944. Mr. Felsvang testified that the patent did not contain information relating to the specific tip speed used at the Hoot Lake site because the tip speed would be different for different sizes of spray dryers. Tr. at 220.

Flakt also alleges that the patent should be held invalid because Niro intentionally concealed the best mode when one of its engineer's determined that the tip speed was a trade secret.

On this record, the Court concludes that Flakt failed to meet its burden of showing that no reasonable jury could have found that the best mode was not disclosed. Certainly, the modification by Felsvang of his testimony presented an issue of credibility for the jury to decide, however, the apparent resolution of the issue in favor of Felsvang's later testimony is reasonable under the circumstances as explained by the witness. Substantial evidence was presented to permit the jury to find the best mode argument unavailable to Flakt.

## C. Validity of the '873 Patent—Public Use Issue

Flakt alleges that the Joy process was in public use for more than a year before the date of the patent application. Flakt contends that Joy and Niro sought the recognition of utility companies, architect/engineers and environmental agencies by inviting them to Hoot Lake for demonstrations of the recycle process. Flakt argues that the demonstrations were for commercial purposes and thus constitute public use. Joy argues that its process was not in public use one year before the patent application. Joy contends that there was a high degree of secrecy regarding the project and that all testing was done under confidentiality agreements. Joy also argues that only a small part of the testing involved the new recycle aspect of a spray dry system and that all tests were done in furtherance of development, not sales.

Section 102(b) of the Patent Act provides that no patent shall issue if the invention was "... in public use or on sale in this country, more than one year prior to the date of the application for a patent in the United States." 35 U.S.C. § 102(b) (1984). The public use and on sale statutory bars provide a necessary balance between several of the underlying policies of the patent system. The statutory bars seek to avoid detrimental public reliance on unpatented inventions, encourage prompt disclosure of new information, and discourage attempts to extend the length of the effective patent monopoly. Chisum at 6.02.

The United States Supreme Court has defined public use as either nonsecret, nonexperimental use of the invention prior to the critical date or commercial use by the inventor prior to the critical date. *Sauquoit Fibers Co. v. Leesoan Corp.*, 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974). The courts have fashioned an excep-

tion to the public use bar by creating the experimental use doctrine. The experimental use doctrine excuses uses that would otherwise qualify as public use if such uses are incidental to experimentation in developing and perfecting the invention. *City of Elizabeth v. The American Nicholson Pavement Co.*, 97 U.S. (7 Otto) 126, 124, 24 L.Ed. 1000 (1877). The courts apply a reasonable purpose test to determine whether the overall purpose is experimentation and not commercial exploitation. The courts look to objective factors such as: (1) whether the inventor inspected the invention regularly; (2) whether the inventor retained control over the invention; (3) whether payment was made for the device; (4) whether users were subject to confidentiality agreements; (5) whether the label "experimental" appeared to be an afterthought; and (6) whether the tests went on longer than necessary. *In re Smith*, 714 F.2d 1127, 1135 (Fed.Cir.1983); *T.P. Laboratories, Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 972 (Fed.Cir.1984). In reaching a conclusion, courts seek to find a balance between allowing the inventor time to test and perfect the invention and not allowing an extension of the patent monopoly. Chisum 6.02.

■ The burden of proof is on the Defendant to present clear and convincing evidence that the invention was in public use. Once the defendant has made a prima facie case, the inventor must present evidence that the use was experimental and not commercial. *T.P. Laboratories* 724 F.2d at 971.

At trial, Mr. Felsvang testified that preliminary tests and experiments were done in Denmark and Maryland but that a much larger plant that produced real flue gas was needed to adequately test the new process. Tr. at 80–82. Mr. Felsvang further testified that any tests done would be of an experimental nature because the success in smaller plants would not necessarily transfer to larger plants. Tr. at 82.

Mr. Felsvang also testified that only he and his co-inventors had access to all the information regarding the experiments that were done at Hoot Lake. Tr. at 109. Mr. Felsvang testified that the records of raw data recorded during the tests were burned so that no information would be leaked. Tr. at 110. Further, Mr. Felsvang stated that visitors were invited to Hoot Lake but all were required to sign confidentiality agreements. Tr. at 110–11.

Mr. Felsvang also testified that he ran many tests at Hoot Lake which were not related to the use of recycled fly ash. Tr. at 107. Mr. Felsvang stated that only 15% of the total tests done at Hoot Lake in the Spring of 1978 related to the new recycle process. Tr. 1531. Flakt's own witness, Mr. Coe, the former head of Joy's Research and Development Department, admitted on cross-examination that Joy's decision about whether to offer the recycle system for sale depended on the results of the tests performed at Hoot Lake. Tr. 1151. Mr. Coe also admitted that the funding for the tests at Hoot Lake was requested through his department, Research and Development, and not through Sales and Marketing. Tr. 1163–65.

Flakt relies heavily on the testimony of Mr. Buschmann, a former Joy engineer who now works for Flakt. Mr. Buschmann testified that he gave tours to potential customers in the Spring of 1978 at Hoot Lake and that it was his impression that Joy's activities were primarily aimed at developing commercial opportunities. Tr. 1187–89. Mr. Felsvang, however, testified that Mr. Buschmann was confusing the Spring of 1978 with the Fall of 1978. Tr. at 1533. Mr. Felsvang stated that in the Spring of 1978 Mr. Buschmann was a junior engineer and spent much of his time working the 11:00 PM to 7:00 AM "graveyard shift" and thus did not have the opportunity to give many tours. Tr. at 1533. In the Fall of 1978, after the critical date for the application of the public use bar, Mr. Buschmann did give many tours to visitors at Hoot Lake. Tr. 1533–34.

■ The Court finds that the jury determined that Mr. Felsvang's testimony was credible and placed little weight on Mr. Buschmann's testimony. The Court agrees with the jury's findings and will not disturb them.

Thus, the Court concludes that Flakt failed to meet its burden of showing that no reason-

able jury could conclude that the patent was in public use one year before the patent application. The Court finds that Joy presented sufficient evidence to rebut Flakt's evidence on public use and a reasonable jury could have concluded there was no public use during the critical period.

### D. Validity of the '873 Patent—Obviousness

■ Flakt contends that the '873 patent is invalid, under Section 103 of the Patent Act because the invention would have been obvious to a person with ordinary skill in the art based on the prior art. 35 U.S.C. § 103 (1984). Specifically, Flakt argues that there was not substantial evidence to support the jury's finding on the scope and content of the prior art. Flakt argues that the legal conclusions of nonobviousness based on these allegedly incorrect findings must be overturned. Joy contends that Flakt has misconstrued its burden of proof and that the jury's finding of nonobviousness must stand.

Section 103 states:

> a patent may not be obtained ... if the differences between the subject matter sought to be patented and prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103. The Court of Appeals for the Federal Circuit set forth the criterion necessary for a determination of obviousness in *In re Dow Chem. Co.*, 837 F.2d 469 (Fed. Cir.1988). The Federal Circuit stated the standard as:

> whether the prior art would have suggested to one of ordinary skill in the art that this process should be carried out and would have a reasonable likelihood of success, viewed in the light of the prior art. Both the suggestion and the expectation of success must be founded in the prior art, not in the applicant's disclosure.

*Id.* at 473 (citations omitted).

The determination of obviousness requires an examination of the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent prior art. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). Secondary considerations such as the commercial success of the patent may also be pertinent. *Id.* at 17–18, 86 S.Ct. at 694.

#### 1. Interrogatory 11(b)

■ Flakt contends that the jury found that the prior art did not disclose the use of dry FGD systems in which the exiting flue gas temperature was maintained at 8 to 40 degrees Centigrade and that such a finding is not supported by substantial evidence. Joy contends, and the Court agrees, that the jury found that Flakt did not meet its burden in proving that the prior art disclosed the use of a system which maintained the asserted temperature range. Thus Joy contends, and the Court again agrees, that the jury's finding requires a conclusion of nonobviousness in view of the statutory presumption of validity.

Flakt argues that the Gheri, et al. Patent No. 4,197,278 is prior art relating to the maintenance of the exit temperature of the flue gas. On cross-examination by Joy, however, Flakt's expert Professor Harriott stated that an engineer, upon viewing the Gheri patent in 1979 (the time of the patent application) might have understood that the temperature had to be at least 10 degrees above the adiabatic saturation point but perhaps would have believed anywhere in the range of 10 to 80 range would be adequate. Tr. 936–937. The testimony of Professor Harriott was further challenged when Joy's counsel read into the record portions of Professor Harriott's testimony from his deposition. In that deposition testimony Professor Harriott admitted that he did not know what engineers would have thought in 1979 and that the numbers he had given in earlier testimony were based on more recent publications. Tr. at 938. Finally, Professor Harriott admitted that he did not consider himself an expert in spray drying. Tr. at 931.

Thus, on this record the Court finds that there is sufficient evidence to support the conclusions reached by the jury and therefore a judgment as a matter of law is not

warranted. Further, the Court concludes there is no manifest injustice present to support the granting of a new trial.

### 2. Interrogatory 11(c)

Flakt contends that the only evidence presented relating to controlling the temperature of the flue gas at the exit of a dry FGD system by adjusting the amount and water content of suspension fed into the spray dryer was Patent No. 4,208,381 ("Isahaya patent") which disclosed such a control mechanism. Flakt argues that Joy never controverted this piece of prior art and thus the jury could not have reasonably found nonobviousness. Joy contends that Flakt has failed to meet its burden of proof because Flakt's expert, Professor Harriott, only briefly addressed the Isahaya patent and did not mention it in his analysis of the validity of the '873 patent. Tr. at 920–923.

The Court finds that the jury did not have sufficient information presented to it to determine the relevance of the Isahaya patent to the question of obviousness. Thus, the Court concludes that Flakt failed to present evidence sufficient for a reasonable jury to make a finding of obviousness and, therefore, the jury's verdict with respect to Interrogatory 11(c) must stand.

### 3. Interrogatory 11(d)

Flakt contends that there is no evidence in the record which could support the jury's finding that the prior art did not disclose/suggest the use of the alkalinity of fly ash to remove sulphur dioxide from flue gas. Flakt argues that the Ness article (Def.Ex. 14) and U.S. Patent No. 4,178,349 disclose the use of alkalinity in fly ash to remove sulfur dioxide from flue gas. Joy responds that the evidence Flakt presented did not disclose the use of fly ash in a dry FGD recycle process, which is the subject of the '873 patent. Joy points to Mr. Neuscheler's testimony that the presence of alkalinity in fly ash does not necessarily indicate that it could be successfully used in a spray dryer. Tr. 525–526. Joy also argues that the Ness article refers to the use of fly ash alkalinity in a wet scrubber process, which Mr. Neus-

cheler explained was a very different process. *Id.*

Again, the Court concludes that Flakt has failed to meet its burden of showing that no reasonable jury could have found the patent obvious. The Court will let stand the jury's finding of nonobviousness with respect to Interrogatory 11(d).

### 4. Interrogatory 11(a)

Flakt alleges that the jury's verdict with respect to Interrogatory 11(a) is unsupported by substantial evidence because the evidence suggesting a recycle process is overwhelming. Flakt points to evidence it produced which included—(1) "material and Energy Balance" a chemical engineering text by Schmidt and List, published in 1962; (2) U.S. Patent No. 3,919,394 ("the Selmeczi patent") which described a wet scrubber process; (3) U.S. Patent No. 4,178,349 ("the Wienert patent") which describes a dry process using lime as a reagent and uses partial recycle; (4) Czech Patent No. 96,138 which describes a process for desulfurizing flue gas; and (5) U.S. Patent No. 3,933,978 ("the Margraf patent") which describes a dry FGD system.

Joy disputes the relevance of each of the above-cited items of evidence with regard to the issue that was before the jury, i.e., did the evidence disclose/suggest a recycling of the product of the reaction in the spray dryer and the fly ash back into the feed suspension. At trial, Joy presented evidence that disputed Flakt's evidence. With regard to the Schmidt and List text, Joy alleges that it was a generic reference to the return of material through a reactor and never mentioned an FGD process. Professor Harriott admitted on cross examination that the Selmeczi patent relates to a wet scrubbing process, not a dry FGD process involving spray dryers. Tr. 859. Joy argues that the Weinert patent relates to a so-called "dry-dry" process which does not involve a liquid slurry mixture. Regarding the Czech Patent, Professor Harriott admitted that the patent states that a substantial amount of the fly ash is removed prior to being put in the spray dryer chamber with the flue gas. Tr. 979, 991–992. Finally, with regard to the Margraf patent, Mr. Neuscheler testified that it is not rele-

vant because it teaches a process for filtering very find dust particles from waste gases of an oil-fired powered plants which do not produce fly ash. Tr. 1447–1449.

The Court finds that Joy presented sufficient evidence to rebut Flakt's claims of obviousness and a reasonable jury could find Flakt's evidence unconvincing. Thus, the Court concludes that Flakt has failed to meet its burden of proof and the jury's verdict of nonobviousness must stand.

### E. Flakt's Motion for New Trial

 Motions for new trial are entirely within the district court's discretion. *Gutzan v. Altair Airlines, Inc.*, 766 F.2d 135 (3rd Cir.1985). District courts will generally grant such a motion only if some grievous error occurred during trial which rendered the trial unfair. In addition, some prejudice to the moving party should be shown. *Orthokinetics*, 806 F.2d at 1581–82. Even in the case of grievous error, however, courts are not inclined to grant such motions where the moving party made no effort to bring the alleged error to the Court's attention at the time it occurred. *Shushereba v. R.B. Industries, Inc.*, 104 F.R.D. 524 (W.D.Pa.1985).

In this case, Flakt has not demonstrated that there was any error nor that Flakt was in any way prejudiced by any alleged error and thus, the Court concludes that a new trial is not warranted.

### F. Lack of Personal Jurisdiction—Indispensable Party

Lastly, Flakt argues that this case should be dismissed because the Court lacks personal jurisdiction over A/S Niro Atomizer, the Danish company which owns the '873 patent. The Court addressed Flakt's contentions in its May 3, 1991 Memorandum Opinion which granted Joy leave to join Niro as an involuntary plaintiff pursuant to Fed.R.Civ.P. 19(a). Joy did join Niro as an involuntary plaintiff and Flakt's Motion to Dismiss was subsequently denied. The Court is not persuaded that the case should now be dismissed on lack of personal jurisdiction grounds for the reasons discussed in the May 3, 1991 Memorandum Opinion.

### V. CONCLUSION

For the reasons discussed, the Court will deny Flakt's Motion for a Judgment as a Matter of Law and, in the alternative, Motion for a New Trial.